UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No ___1:20CR73-JJM-LDA___ |
| v. | |
| CHIRAG SACHDEVA | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States and Defendant CHIRAG SACHDEVA ("Defendant" or "Sachdeva") have reached the following agreement:

1.    Defendant's Obligations.

a.    Defendant will waive presentation of this matter to a grand jury and consent to the filing of a seven-count Information that charges defendant with wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349.  Defendant agrees that Defendant will plead guilty to said Information.  Defendant further agrees that the time between the filing of this plea agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act, 18 U.S.C. § 3161.

b.    Defendant agrees to not to advocate for any sentence lower than 12 months of incarceration.

2.    Government's Obligations.

In exchange for Defendant's pleas of guilty:

a.    The government will recommend that the Court impose a term of imprisonment within the range of sentences for the offense level determined by the Court under the United States Sentencing Guidelines (the U.S.S.G. or "guidelines"), but not including probation or a "split-sentence," even if permitted under the guidelines.

b.    For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of

responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

        c.      As of the date of this agreement, Defendant has timely notified authorities of an Intention to enter a plea of guilty. If the offense level is 16 or greater and Defendant enters a plea of guilty pursuant to this agreement, the government will move the sentencing Court for an additional decrease of one level, pursuant to U.S.S.G. § 3E1.1(b), unless Defendant indicates an intention not to enter a plea of guilty, thereby requiring the government to prepare for trial.

        d.      The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

        e.      If Defendant pleads guilty pursuant to this plea agreement, recommends a sentence no lower than 12 months, and does not advocate for a sentence lower than 12 months, the government will not – based on the offense conduct in this case – bring aggravated identity theft charges under 18 U.S.C. § 1028A. Defendant understands that such charges could expose him a mandatory 12-month term of incarceration that would run consecutive to the term of incarceration imposed for each of the wire fraud counts.

3.      Defendant understands that the guidelines are not binding on the Court, and that, although the Court must consult the guidelines in fashioning any sentence in this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

4.      The United States and defendant stipulate and agree to the following facts under the guidelines:

a.     Defendant, an Indian national, had between 2015 and 2019, engaged in telemarketing fraud activities that involved making misrepresentations to residents of the United States for the purpose of inducing them to purchase putative computer protection services.   In those frauds, Defendant frequently served as a broker, connecting by telephone the victims, who had been misled to believe that malware had been detected on their computers, to call center operators in India, who obtained money from the victims by inducing them to purchase putative computer protection services.

b.     In 2019, Sachdeva was affiliated with persons who were engaged in the above telemarketing fraud activities and who had access to personal information obtained from victims by call center operators.   During the course of pitching the putative computer protection services to the victims, the call center operators obtained personal information and materials from the victims and from the victims' computers through remote access applications.   Such information and materials included the victims' names, bank names, dates of birth, social security numbers, home addresses, online-banking usernames and passwords, and driver's license photographs and numbers.

c.     Beginning no later than September 6, 2019, Defendant telephoned an acquaintance who was in Rhode Island and inquired whether the acquaintance could, if provided victims' personal information and materials, assist in misappropriating funds from the victims' bank accounts.

d.     On October 21, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from SM's Chase Bank Account and advised that the account contained $8,000 to $10,000.   Defendant had obtained this personal information and material from his aforementioned affiliates.

3

e.  On October 30, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from CP's Wells Fargo Bank Account and advised that the account contained $10,000.  Defendant had obtained this personal information and material from his aforementioned affiliates.

f.  On November 6, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from CW's Fidelity Account and advised that the account contained $80,000.  Defendant had obtained this personal information and material from his aforementioned affiliates.

g.  On November 6, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from RN's Nusenda Credit Union Account.  Defendant did not specify the amount of money in the account. Defendant had obtained this personal information and material from his aforementioned affiliates.

h.  On November 6, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from PP's bank account.  Defendant did not specify the amount of money in the account.  Defendant had obtained this personal information and material from his aforementioned affiliates.

i.  On November 26, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from RT's Bank Account and advised that the account contained $350,000.  Defendant had obtained this personal information and material from his aforementioned affiliates.

4

j.    On November 26, 2019, Defendant via telephone and separately via text message provided his acquaintance personal information and materials sufficient to withdraw money from RG's Bank Account and advised that the account contained $150,000.   Defendant had obtained this personal information and material from his aforementioned affiliates.

k.    Defendant anticipated obtaining approximately fifty percent of any money that his acquaintance was able to misappropriate from victim accounts.

k.    Defendant's acquaintance was assisting the Government in the investigation of Defendant's activities.   During the course of the aforementioned communications between Defendant and the acquaintance, the Defendant was located in India and the acquaintance was located in Rhode Island.

l.    Defendant was able to use or have others use SM, CP, CW, RT, and RG's online-banking login information – which had been provided to Defendant by his aforementioned affiliates – to access online account information and determine the amount of money in the victims' bank accounts.

m.    Defendant knew or suspected that SM, CP, CW, RN, PP, RT, and RG were elderly individuals, each likely over the age of 65.

n.    The parties agree that no decrease of offense level is appropriate under Guideline § 2X1.1.

k.    The parties agree that a substantial part of the fraudulent scheme was committed from outside the United States and that therefore the enhancement under Guideline § 2B1.1(b)(10) applies and requires a 2-level enhancement and a resulting offense level no less than 12.

l.    The parties agree and stipulate that Defendant's intended fraud loss was $600,000.

5. Except as expressly provided in the preceding paragraph, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

6. The maximum statutory penalties for each of the seven counts of wire fraud to which Defendant is pleading guilty are 20 years imprisonment, a fine of $250,000, a term of supervised release of 3 years; and a mandatory special assessment of $100. If imposed consecutively, the maximum penalties for all offenses to which Defendant is pleading guilty would be 140 years imprisonment, a fine of $1,750,000, and a term of supervised release of 21 years. The mandatory special assessment totals $700.

7. Defendant agrees that, after Defendant and Defendant's counsel sign this plea agreement, counsel will return it to the United States Attorney's Office along with a money order or certified check, payable to the Clerk, United States District Court, in payment of the special assessments. Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

8. Defendant is advised and understands that:

   a. The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

   b. Defendant has the right to plead not guilty, or having already so pleaded, to persist in that plea;

   c. Defendant has the right to a jury trial;

6

d.    Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

e.    Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

f.    Defendant waives these trial rights if the Court accepts a plea of guilty.

g.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.   Under federal law, a broad range of crimes are removable or deportable offenses.   Likewise, if defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization as well as removal and deportation. Removal, deportation, denaturalization, and other immigration consequences are the subject of separate proceedings, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his removal or deportation from the United States or his denaturalization.

10.    Except for paragraphs 2 and 4 above, the parties have made no agreement concerning the application of the guidelines in this case.

11.    Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed.   The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations.   The Court is free to impose any sentence it deems appropriate up to and including the statutory maximum.   Defendant also understands

that even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty.

12.     Defendant hereby waives Defendant's right to appeal the convictions and sentences imposed by the Court, if the sentences imposed by the Court are within or below the Guidelines determined by the Court.   This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

13.     This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses.   Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate.   If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

14.     This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

15.     This agreement constitutes the entire agreement between the parties.   No other promises or inducements have been made concerning the plea in this case. Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement.   Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

16.     Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's   knowledge and belief, Defendant understands the agreement.

17.    Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.

_____    08/13/2020        _____    8/13/20
Chirag Sachdeva           Date              John L. Calcagni III Esq.    Date
Defendant                                   Counsel Defendant


_____    8/31/2020        _____    8/31/2020
Milind Shah               Date              Sandra R. Hebert            Date
Assistant U.S. Attorneys                    Assistant U.S. Attorney
                                            Criminal Division Deputy Chief

9