UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CASE NO.: 1:20-CR-00073-JJM-LDA |
| | : | |
| CHIRAG SACHDEVA | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Chirag Sachdeva, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a).   As such, he asks for a sentence of one year and one day.

## I.   BACKGROUND

On February 12, 2020, the government filed a Criminal Complaint charging Mr. Sachdeva with (1) Attempted Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1349; (2) Attempted Bank Fraud, in violation of  18 U.S.C. §§ 1344 and 1349; (3) Conspiracy to Commit and/or Attempt the Aforementioned Frauds, in violation of 18 U.S.C. § 1349; and (4) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.[1]  Mr. Sachdeva was arrested on February 18, 2020, pursuant to a warrant, upon his arrival in the United States from India. He initially appeared before the Court that same day and was ordered detained. [2]

On August 31, 2020, the government filed a 7-count Criminal Information charging Mr. Sachdeva with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1349.[3]   He appeared before the Court on September 14, 2020 for both an arraignment and a change of plea hearing.  Pursuant to a plea agreement with the government, he waived his right to grand injury indictment and pleaded

---

[1] PSR, ¶.1.
[2] PSR, ¶.2.
[3] PSR, ¶.3.

guilty to the charged offenses.  The Court accepted his pleas and adjudged him guilty.[4]   He again

was remanded.  Mr. Sachdeva is currently scheduled for sentencing on November 6, 2020.

U.S. Probation issued its final presentence report (PSR) on October 30, 2020.  The Defense

does not have any objections to the final PSR.  Mr. Sachdeva falls into Criminal History Category

I[5] and has a total offense level of 20,[6] which results in an advisory U.S. Sentencing Guidelines

(USSG) range of 33-41months.[7]

## II.    SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than

necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a).

*United States v. Booker*, 543 U.S. 220 (2005).   Sentencing should begin with a calculation of the

applicable sentencing guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing*

*Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)).  The guidelines calculation is a starting point

and initial benchmark for the Court to consider, however, it is not the only sentencing

consideration.  *Id.*

A Court may not presume the guidelines range is reasonable but must make an

individualized assessment of each defendant based upon the facts presented in each case.  *Gall,* 128

S. Ct. at 597.  After both parties are afforded an opportunity to argue for whatever sentence they

deem appropriate, the Court must then consider the factors[8] of 18 U.S.C. § 3553 (a) to determine

---

[4] PSR, ¶.4.
[5] PSR, ¶.44.
[6] PSR, ¶.41.
[7] PSR, ¶.70.
[8] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)  the need for the sentence imposed:
        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B)  to afford adequate deterrence to criminal conduct;

the most appropriate sentence for the instant case. *Id*. As such, Mr. Sachdeva asks the Court to impose a sentence of one year and one day.

### (1) Acceptance of Responsibility and Mitigation Efforts

Mr. Sachdeva makes no effort to minimize or marginalize the seriousness of his misconduct. He accepts full responsibility for his actions.[9] Mr. Sachdeva knows full well that what he did was wrong. In an effort to mitigate his wrongdoing, he quickly accepted responsibility by pleading guilty to the charged offense, which demonstrate his genuine remorse, and efforts to "right his wrongs." Prior thereto, he also attempted to mitigate his efforts by voluntarily attending a proffer session with authorities. He asks the Court to take all of this into consideration when adjudging his sentence.

### (2) Actual Loss Amount

The parties stipulate that the intended loss amount in this case was $600,000.00. This number is derived from simply adding up the account balances for the five respective accounts for which Mr. Sachdeva provided information to the government's cooperating witness.[10] However, the Court should note that the actual amount of money lost, due to Mr. Sachdeva's actions, was $23,000.00.[11] This equates to less than 5% of the intended loss. The loss amount, paling in comparison to the average fraud scheme case adjudicated by this Court, was one of the primary

---

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

[9] PSR, ¶.4.
[10] PSR, ¶.23.
[11] See Document #3 on the Docket, Criminal Complaint, ¶.46a.

considerations for the parties' agreed-upon 12-month floor on sentencing recommendation that is set forth in the terms of the plea agreement.  Further, the stark contrast between the actual and intended loss numbers in this case reveals that the advisory sentencing guidelines range does not accurately or reasonably address the severity of Mr. Sachdeva's admitted misconduct.   This is, in part, why, the Defense seeks a below-guidelines sentence of one year and one day.

### (3) History and Characteristics of the Defendant.

#### A. Family

Mr. Sachdeva is age 30 and was born in Faridabad, India.  His father, Kishan Kumar Sachdeva, sadly abandoned his family when Mr. Sachdeva was age 8.  As a result, Mr. Sachdeva has no relationship with his father or any idea of his father's whereabouts.  His mother, Radha Sachdeva, age 57, is a homemaker and lives in India.  Mr. Sachdeva has one sister, Sahiba Sachdeva, age 24, who a citizen of India and attends graduate school in Canada[12]

Mr. Sachdeva's parents had a very abusive and toxic relationship while he was growing up. Mr. Sachdeva remembers his mother being beaten on a daily basis.  When she finally had enough and fought back, the man abandoned his family.  As a result, Mr. Sachdeva, his mother and his sister moved in with his maternal uncle, who kindly provided for them.[13]   As a result of this, Mr. Sachdeva took on the father figure/guardian role in his family, at a very young age.[14]  His early exposure to domestic violence and financial pressures of supporting others undoubtedly shaped his psyche and contributed, at least in part, to his poor decision to become involved with fraud.

Mr. Sachdeva continued to share a very close relationship with his mother during his childhood through his adolescent years.  This was until she "disowned" him after he married his

---

[12] PSR, ¶.48.
[13] PSR, ¶.49.
[14] PSR, ¶.50.

wife. Although they continued to share a home after the wedding, Mr. Sachdeva's mother did not speak to him or her daughter-in-law in approximately 8 months. His incarceration has slowly brought the family together by sparking dialogue between the mother and daughter-in-law, and interest by a mother in her son's wellbeing. Mr. Sachdeva is hopeful that once he returns home, he will be able to permanently repair his relationship with his mother. Even more sad is that Mr. Sachdeva's sister is unaware of his incarceration. She believes she has not heard from him due to illness. He is simply too ashamed to inform her of the legal trouble he has brought upon himself. He also does not want to become a source of worry or emotional concern for his sister, fearing that such may jeopardize her mental health and college studies. This weighs heavily on Mr. Sachdeva, as he both misses his sister dearly, but also feels as though he has abandoned her.[15]

As stated above, Mr. Sachdeva is married and shares a very loving and supportive relationship with his wife, Deeksha Sachdeva. Deeksha Sachdeva, age 28, was previously employed as a teacher. However, due to the COVID pandemic, she lost her position at the school and remains unemployed. The couple have no children.[16] She resides with her mother-in-law in India patiently awaiting the return of her husband. Mr. Sachdeva is hopeful to return to India soon, reunite with his family, and begin rebuilding his life upon completing his sentence.

### B. Education

Mr. Sachdeva is well-educated. He is also fluent in English. In 2009, he also obtained computer programming certifications in JAVA, and C++ at Ducat India, a technology training institute. In 2012, he graduated from the Aravali College of Engineering and Management in India with a bachelor's degree. In 2013, he also obtained a second degree in Computer Applications.[17]

---

[15] PSR, ¶.51.
[16] PSR, ¶.52.
[17] PSR, ¶.62.

Mr. Sachdeva, upon his return to India, is hopeful to put his education to good use in terms of searching for and securing meaningful employment so that he may begin repaying the restitution, costs and/or fines that this Court may order as part of his sentence.

### C. **Employment**

In 2012, Mr. Sachdeva started Integral IO Technology Consulting, LTD, which specialized in social media.  After about one year, when this venture did not take off, he began to pursue website development, digital marketing and customer relations management.  Also, in 2012, he started another website development company, I Secure Gadgets Tech Solutions, LTD, which did mostly call center work.  This company is no longer in operation.[18]  In 2013, Mr. Sachdeva worked for Holidopia Holidays, a digital travel agency.[19]  In 2016, he and a friend created and launched a customer relations software program called Induidsesk.[20]  This company, too, is no longer in operation.  These business ventures are strong evidence of Mr. Sachdeva's intelligence, ingenuity, and entrepreneurial spirit.   Given his young age and experience, Mr. Sachdeva has the opportunity for a very bright and law-abiding future once released from incarceration.   This should be important to the Court when seeking to assess his likelihood of recidivism and potential for long-term rehabilitation.

### D. **Mental Health**

Mr. Sachdeva has suffered with mental health issues to include panic attacks and symptoms of anxiety.  These symptoms initially began in 2013, when Mr. Sachdeva was abducted, robbed and sexually assaulted by a cab driver and another passenger in India.  Because there is little to no importance placed on mental health treatment or counseling in India, Mr. Sachdeva did not seek

---

[18] PSR, ¶.64.
[19] PSR, ¶.65.
[20] PSR, ¶.63.

any professional help for the symptoms he experienced following this incident.  He also failed to report what occurred to authorities due, in part, to embarrassment and humiliation, and in part, fear of retaliation.  He continued to suffer with these symptoms until he was incarcerated at Wyatt where he was prescribed Wellbutrin[21] to manage his symptoms and allowed to speak with a counselor every two to three weeks.[22]

To make mental health matters even worse for Mr. Sachdeva, his friend, Amit Mittal, committed suicide in May 2019.  This caused Mr. Sachdeva to emotionally spin out of control.  He too was hospitalized for a short period of time due to suicidal ideations.  While at the Wyatt, he was placed on suicide watch a number of times due to his deep depression and anxiety.   Counsel has first-hand knowledge of this because when Mr. Sachdeva expressed thoughts of ending his life with his family, they contacted counsel to express their concerns, which in turn, prompted official notification by Attorney Calcagni's office to the Wyatt.

The PSR indicates that Probation "was unable to verify the defendant's current mental wellbeing and care at the Wyatt Detention Facility."   Defense Counsel has firsthand knowledge of Mr.  Sachdeva's emotional struggles while at the Wyatt.  During the pandemic, he visited with Mr. Sachdeva on a number of occasions, often breaking quarantine, to check in on his client after learning (on multiple occasions) of the client's suicidal ideations.  Mr. Sachdeva often presented as crying, appearing to be in despair and often hopeless.  Since his medication has been properly regulated (there were issues with it during the first several months of his incarceration), Mr. Sachdeva has shown great improvement.  He also continues to attend counseling, when sessions are available within the facility.

---

[21] https://www.webmd.com/drugs/2/drug-13509/wellbutrin-oral/details
[22] PSR, ¶.58-59.

**(4)** <u>**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense.**</u>

Mr. Sachdeva's admitted actions amount to serious misconduct by any measure or standard. The Defense concedes that punishment for his actions is certainly warranted to include a term of incarceration.  The advisory USSG range provides for a possible jail sentence of 33 – 41 months.[23] At the time of sentencing, Mr. Sachdeva will have served a total of 263 days or 8 months and 20 days of incarceration.[24]   For someone like this Defendant with no criminal history or prior experience with incarceration, combined with his mental health problems and separation from family, this time period has felt like a lifetime.   Mr. Sachdeva assures the Court that this time at the Wyatt is sufficient to deter him from ever reoffending and asks that any further period of incarceration be minimized.

**(5)** <u>**Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**</u>

A lengthy prison sentence, is not necessary to achieve this multi-faceted sentencing objective for Mr. Sachdeva.  First, he has no criminal history and therefore, stands before the Court as a first-time offender.  This case represents Mr. Sachdeva's first and last negative encounter with the criminal justice system.   It also represents his first and last time ever in prison.   He has endured many hardships and learned meaningful lessons while incarcerated, to include being separated from his wife and family.   Further, with the fear of COVID-19 within the Wyatt Detention Facility has further impacted him.  Because Mr. Sachdeva is not a U.S. Citizen and has no lawful status to remain in the United States (his visa was cancelled), he was precluded from making a meaningful request for his release on bond.

---

[23] PSR, ¶.70.
[24] https://www.timeanddate.com/date/durationresult.html?m1=02&d1=18&y1=2020&m2=11&d2=06&y2=2020&ti=on

Additional jail time is also not warranted to promote Mr. Sachdeva's respect for the law. While his admitted misconduct ran afoul of the law, his post-arrest conduct aimed to mitigate his actions underscores his rehabilitation.   Lastly, further time in prison is not required to protect the public from Mr. Sachdeva.  He has had no infractions while housed in the Wyatt Detention Facility, no history or reputation for violence, and is not an affiliate any a gang or criminal organization.  He will be deported once released from incarceration, which will effectively remove him from American society, as he has no legal status to remain in the United States.  There is an active immigration detainer against Mr. Sachdeva.[25]  All of these factors should be considered by the Court when imposing sentence.

**(6)** **Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Mr. Sachdeva avers that a lengthy jail sentence is also not required to provide him with any education or vocational training, medical care or other correctional treatment.  He is in good physical health.  The counseling and medication he is receiving at the Wyatt are equally, if not more available to him in society.  Mr. Sachdeva is also college educated and has significant computer and business experience.   This combination of factors renders him suitable for employment once released from incarceration, and a strong candidate for long-term rehabilitation with a very low risk, if any, of recidivating.

**(7)** **Immigration Consequences.**

Mr. Sachdeva is not a U.S. citizen.  Because of the offense to which he pleaded guilty, and due to the fact that he is now in the country illegally, he is subject to deportation – a collateral consequence not incurred by citizen-offenders – upon completing his jail sentence.  *See Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J.) (deportation is "a life sentence of banishment in

---

[25] PSR, ¶.67.

addition to the punishment which a citizen would suffer from the identical acts."). Mr. Sachdeva stipulates to his removal from the United States and deportation to India. He asks that this consequence be imposed against him as soon as possible following his sentence. *See United States v. Szanto*, 2007 WL 3374399 (N.D. Ill. Nov. 8, 2007) (district court granted downward department variance based on, among other things, defendant's agreement to be deported).

Non-citizen offenders are rarely, if ever, eligible for early release, supervised release, or similar programs. *See e.g., United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005) (district court noted defendant would be punished more than a citizen due to ineligibility for six-month half way house at end of term); *United States v. Pacheco-Soto*, 386 F. Supp. 2d 1198 (D.N.M. 2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum guideline term of 74 months, in light of his ineligibility for early release, minimum security prison, or credits for participation in residential drug or alcohol abuse program). Further, persons subject to deportation upon completion of a sentence typically spend additional time in immigration custody while awaiting deportation. Mr. Sachdeva asks this Court to take these factors into consideration when adjudging the incarceration component of his sentence.

### III.   ATTACHMENTS

A. Statements of Support;[26]

B. Letter from Wyatt;

C. Certificate of Completion;

D. Facebook posts in Memory of his Late Friend; and

E. Photographs.

---

[26] The Defense acknowledges that the attached letters are not signed. However, they were received by email directly from Mr. Sachdeva's friends and family in India.

## IV.    CONCLUSION

Based upon the foregoing, Mr. Sachdeva respectfully asks the Court to impose a sentence of

one year and one day, followed by a term of supervised release and restitution, which he contends is

"sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted on this 5th day of November 2020.

> Respectfully submitted,
> Defendant,
> Chirag Sachdeva
> By his Counsel
>
>
>
> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (# 6809)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Suite 300
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email:  jc@calcagnilaw.com

## <u>CERTIFICATION</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on November 5, 2020.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (# 6809)
Law Office of John L. Calcagni III, Inc.
One Custom House Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email:  jc@calcagnilaw.com

12