IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * * * * *   C.R. NO. 20-73-JJM
                                *
UNITED STATES OF AMERICA        *
                                *
    VS.                         *   SEPTEMBER 14, 2020
                                *   2:00 P.M.
CHIRAG SACHDEVA                 *
                                *
* * * * * * * * * * * * * * * *   VIA VIDEOCONFERENCE


            BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

                            CHIEF JUDGE


                 (Arraignment and Change of Plea)



APPEARANCES:

FOR THE GOVERNMENT:    MILIND M. SHAH, AUSA
                       U.S. Attorney's Office
                       50 Kennedy Plaza
                       Providence, RI  02903

FOR THE DEFENDANT:     JOHN L. CALCAGNI, III, ESQ.
                       Law Office of John L. Calcagni III
                       72 Clifford Street, Suite 300
                       Providence, RI  02903

Court Reporter:        Karen M. Wischnowsky, RPR-RMR-CRR
                       One Exchange Terrace
                       Providence, RI  02903

14 SEPTEMBER 2020 -- 2:00 P.M.

VIA VIDEOCONFERENCE

THE COURT:  Good afternoon, everyone.  We're here for an arraignment and a change of plea in the United States versus Chirag Sachdeva.  Help me pronounce that.

MR. CALCAGNI:  Chirag Sachdeva.

THE COURT:  Sachdeva.

THE DEFENDANT:  Sachdeva.

THE COURT:  Sachdeva?

THE DEFENDANT:  Yes, sir.

MR. SHAH:  And the first name, your Honor, is Chirag.

THE COURT:  Mr. Sachdeva, we're here to begin the arraignment and the change of plea, and we're doing this via Zoom; that is, we're doing this over the video and electronically.  Can you hear and see me?

THE DEFENDANT:  Yes, your Honor, I can see you and hear you.

THE COURT:  Okay.  And the Court has determined that in light of the pandemic, that it would not be safe for us to gather in the courtroom at this time.

You have an absolute right to be present in the courtroom for your arraignment and your hearing; but because of the pandemic, we've instead offered the

ability to do this via Zoom.

Do you understand that you have a right to be present, and is it my understanding that you wish to waive any right you have to be present for these hearings?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And did you discuss that with your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And, Mr. Calcagni, you're in agreement with Mr. Sachdeva's waiver as well?

MR. CALCAGNI: Yes, your Honor.

THE COURT: Okay. So we're here to begin with an arraignment on a seven-count Information dated August 31st, 2020. And before we talk about that, Mr. Sachdeva, I need to tell you about certain rights, very important rights that you have.

The first right is the right to remain silent. That means you do not have to say anything at all whatsoever about this matter to anyone. In fact, if you even begin to talk about the matter and then decide not to, you can stop and assert your right at any time.

Most importantly, though, you need to know that if you do speak, anything that you say can be used against you. Do you understand your right to remain

silent and how to invoke it?

THE DEFENDANT: Yes, your Honor, I understand.

THE COURT: Second of all, you have a right to counsel at every step of the proceedings. You have a right to hire counsel of your own choice, and if you can't -- or if you can't afford counsel, you may apply to the Court, and the Court will appoint counsel for you. Do you understand those rights as well?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Calcagni, are you retained or appointed?

MR. CALCAGNI: I am retained, your Honor.

THE COURT: Okay. So if you were to determine at any point, Mr. Sachdeva, that you could not afford an attorney, the Court would appoint an attorney for you. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And at this point you do not wish the Court to appoint an attorney for you and you wish to continue with Mr. Calcagni?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Now, you have a right to have your lawyer present with you whenever the Government attempts to speak with you about this matter, if they ever were to. You have an absolute right to have your

lawyer present with you.

All you have to do to assert that right is say, "I don't want to speak without my lawyer present," and the Government would have to stop speaking to you.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, you're here because the United States has brought an Information against you charging you with seven counts of wire fraud all in violation of 18 U.S.C. Section 1343 and 1349.

Mr. Calcagni, did you receive a copy of the Information?

MR. CALCAGNI:  Yes, I did, your Honor.  I've also reviewed it with my client.

THE COURT:  Great.  Thank you.  Do you believe your client understands the nature of the charges?

MR. CALCAGNI:  Yes, I do.

THE COURT:  Mr. Sachdeva, do you understand the nature of the charges that have been brought against you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So, in essence, the Government has charged that on or about September 6th, 2019, in Rhode Island, that you and others devised a scheme to defraud and obtain money from victim bank accounts by means of

materially false and fraudulent pretenses, et cetera, and that having funds misappropriated from the victims' bank account by providing another person material information gathered from the victim so as to enable that person to pose as each of the victims and gain access to their bank accounts and by selling purported services to the victims.

Do you understand the nature of the proceedings that have been brought -- the charges that have been brought against you, Mr. Sachdeva?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, one last right I want to talk to you about is your right to an Indictment and to have your case presented to a grand jury.

You have an absolute constitutional right to require the Government to present the case against you to a grand jury. The grand jury is composed of 12 -- at least 12 people who would sit and hear all of the evidence that the Government has in order to prove its case against you. They would have to prove probable cause for an Indictment to be issued against you.

If the Government was not able to convince the grand jury that there was probable cause to indict you, then no charges could be brought against you. You'd walk away free. But by waiving your right to an

Indictment, you give up the chance that the grand jury could come back with a no true bill, no Indictment.

THE COURT: Do you understand that you have these -- this right and do you understand that you're waiving this right?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed your right to a grand jury with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did he answer all of your questions about it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did anyone make any threats or did anyone make any promises to you to get you to waive your right to a grand jury Indictment?

THE DEFENDANT: No, your Honor.

THE COURT: You've submitted a waiver of rights form that Ms. McGuire will affix my signature to and file on the record because I find that your waiver of your right to an Indictment by a grand jury is made voluntarily and knowingly.

So now I'd like to enter the change of plea portion of the hearing, and at this point I'd ask you to be sworn in.

(Defendant sworn)

THE CLERK: Please state your name and spell your last name for the record.

THE WITNESS: Chirag Sachdeva.

THE COURT: Mr. Sachdeva, you're now under oath. You can put your hand down. Thanks. You're now under oath. That requires you to give me truthful answers to the questions I ask.

If you fail to give me truthful answers, the Government can bring further charges against you like perjury or filing a false statement. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Sachdeva, you signed a plea agreement in this case. Your lawyer signed it, and the Government signed it. Do you remember signing that plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you sign that plea agreement voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: If I ask you any question that you don't understand, just ask me to repeat it or explain it further, and I'd be glad to. And if at any time you want to talk privately with your attorney, even before you answer a question, you let me know; and we have a

breakout room that would allow you on this Zoom hearing to have a private, confidential conversation with your attorney. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Sachdeva, how old are you?

THE DEFENDANT: I turned 30 last week.

THE COURT: You turned 30 last week. Well, happy birthday to you.

THE DEFENDANT: Thank you, sir.

THE COURT: How far did you go in school?

THE DEFENDANT: Sir, I completed my high school. After that I went to college for my bachelor's degree.

THE COURT: Did you obtain your college degree?

THE DEFENDANT: Yes, sir.

THE COURT: And have you been treated recently for any mental illness or addiction to narcotic drugs?

THE DEFENDANT: Sir, I'm being treated for my mental illness.

THE COURT: Just in general, tell me what type of treatment you're receiving.

THE DEFENDANT: I'm getting psychiatric treatment plus Wellbutrin for my mental health.

THE COURT: And what is the Wellbutrin for, do you know?

THE DEFENDANT: It's for my major depression.

I'm suffering from depressive disorder.

THE COURT: When's the last time that you took the Wellbutrin?

THE DEFENDANT: Today in the morning.

THE COURT: This morning. Does it affect your ability to think clearly?

THE DEFENDANT: Yes, sir.

THE COURT: It does?

THE DEFENDANT: Yeah.

THE COURT: So are you not able -- are you not able to think clearly this morning?

THE DEFENDANT: I do. I can think clearly.

THE COURT: You can. So the Wellbutrin that you took this morning isn't making you -- is it making you groggy right now or lightheaded or anything?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. So do you believe that you can think clearly and make good decisions for yourself this morning?

THE DEFENDANT: Yes, your Honor.

THE COURT: This afternoon?

THE DEFENDANT: Yes, your Honor.

THE COURT: Other than the Wellbutrin, what else are you taking, any other drugs, medication or alcoholic beverages at this time?

THE DEFENDANT:  One medication will start from tomorrow.  It's for my panic attacks.  It is for anxiety.  I don't know the name of the medication.

THE COURT:  But you're not taking that until tomorrow?

THE DEFENDANT:  Yes.

THE COURT:  Are you fully satisfied with the representation that you've received from Mr. Calcagni in this case?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Sachdeva, you have certain rights under the laws and Constitution of the United States.  I want to make sure that you understand that you have these rights and that if you change your plea to guilty you'll be giving up these rights.

One right you never lose, and that's the right to plead not guilty.  You could continue to plead not guilty as you have so far in this case, and you could keep that plea throughout all of the relevant proceedings.

If you were to plead not guilty, you'd be entitled to a trial by a jury.  At that trial you'd be presumed to be innocent and the Government would have to prove each and every element of the charge it brings against you beyond a reasonable doubt.

You'd have a right to see and hear, confront, have your lawyer cross-examine all of the witnesses and the evidence that the Government would put on in order to prove its case against you.

You'd also be allowed to put on a defense. In fact, you could subpoena people, make them come to court and testify in your defense.

Also, you'd have the right to testify at that trial, but perhaps more importantly you would not have to testify. And if you chose not to testify, that fact could not be used against you in any way by the Court or the jury.

But if you change your plea to guilty today, you'll give up all of these rights and there will be no trial. Do you understand that you have these rights and that if you change your plea to guilty you'll give up these rights?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone in any way attempted to force you to plead guilty or threatened you in any way to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone made any promises or assurances to you other than what's contained in the plea agreement to get you to plead guilty to these

charges?

THE DEFENDANT: No, your Honor.

THE COURT: So are you knowingly and voluntarily changing your plea to guilty today because you've determined that it's in your best interest now to do so?

THE DEFENDANT: Yes, your Honor.

THE COURT: So the maximum penalties, what the Court can impose at the time of sentencing, are as follows:

For each of the seven counts, each carry with it a maximum term of imprisonment of 20 years, a maximum fine of $250,000, three years of supervised release and a $100 mandatory special assessment.

Now, if the Court were to impose the maximum penalty as to each of the seven counts and if the Court were to require that those sentences be run consecutively, that means one after the other, then the maximum term of imprisonment is 140 years, the maximum fine is $1,750,000, 21 years of supervised release, and there will be a $700 mandatory special assessment.

Do you understand that these are the maximum penalties that the Court could impose at the time of sentencing in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you a citizen of the United States?

THE DEFENDANT: No, your Honor.

THE COURT: Have you discussed the implications that a plea of guilty to a felony will have on your residency status with immigration authorities? Have you discussed that with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: And has he answered all of your questions about that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that if you plead guilty to these felonies, it's very likely that you'll be deported?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, Mr. Sachdeva, I want to make sure that you understand how the Court will go about determining what an appropriate sentence is in your case.

At some point after this hearing, probation will make an appointment to interview you. They'll probably do it via Zoom. You have a right to have your lawyer present with you for that, present either in person or by Zoom as well, and I encourage you to make sure that your attorney is on the Zoom call. It's an important

moment in this case where you should have your attorney present with you.

After they prepare the presentence report, they will calculate the advisory guideline range. Those are guidelines that will help me determine what an appropriate sentence is in your case.

Now, Mr. Calcagni may have calculated what he thinks the guideline range will be or the Government may have done that and told you. None of that's binding on the Court.

I won't determine the guideline range in your case until after the presentence report is issued, both sides have a chance to object to it, and at the time of sentencing, sometime at the beginning of December, I'll determine the guideline range.

Do you understand as we sit here today that I've not yet determined what the guideline range will be in your case? Mr. Sachdeva?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that we've not yet determined what the guideline range will be in your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: And that we will not determine that until the time of sentencing. Do you understand that

as well?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that as part of the plea agreement you agreed to waive any right to appeal the sentence I impose if the Court imposes a sentence that is I believe within or below the guideline range?

Do you understand that you've waived your right in most instances under those circumstances if the Court accepts your plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. I'm going to ask Mr. Shah now to tell us what the elements of the seven counts are that have been brought against you and then to tell us what facts the Government would prove if this case were to go to trial.

I want you to pay particular attention to the facts because at the end of it I'm going to ask you if you admit the facts as stated by the Government as true. Okay?

THE DEFENDANT: Okay, your Honor.

THE COURT: Mr. Shah.

MR. SHAH: Thank you, your Honor. Were this -- the seven counts set forth in the Information each charge wire fraud. There are four elements to wire

fraud.

They are that there was a scheme substantially as charged in the Indictment to defraud or obtain money or property by means of false or fraudulent pretenses; two, that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter or the scheme to obtain money or property involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter; three, that the Defendant knowingly and willfully participated in the scheme with the intent to defraud; four, for the purpose of executing the scheme or in furtherance of the scheme, Defendant caused an interstate wire communication to be used or it was reasonably foreseeable for the purpose of executing the scheme or in furtherance of the scheme an interstate wire communication would be used on or about the dates alleged.

Your Honor, were this matter to have proceeded to trial, the Government's evidence would establish the following with respect to Defendant Chirag Sachdeva:

In 2019, through a prior involvement in certain telemarketing fraud activities between 2015 and 2019, Defendant obtained or had access to personal information about the victims of those fraud

activities, including the victim's name, date of birth, Social Security numbers, home addresses, driver's license photographs and driver's license numbers.

Also included in that personal information that was obtained by the Defendant were the victims' bank names as well as the victims' online banking usernames and passwords.

Beginning no later than September 6th, 2019, the Defendant telephoned an acquaintance who was in Rhode Island and inquired whether that acquaintance could, if provided the aforementioned classes of victim personal information, assist the Defendant in misappropriating funds from the victims' bank accounts by posing as the victims and withdrawing funds from their accounts.

That acquaintance, unbeknownst to the Defendant, at the time was assisting the Government in the investigation of telemarketing fraud matters.

On October 21st, 2019, the Defendant telephoned and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from SM's Chase bank account and advised that the account contained between $8,000 and $10,000.

On October 30th, 2019, the Defendant via telephone and separately via text message provided the

Government cooperator personal information and materials sufficient to withdraw money from CP's Wells Fargo bank account and advised that the account contained $10,000.

On November 6th, 2019, the Defendant telephoned and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from CW's Fidelity account and advised that the account contained $80,000.

Also on November 6th, 2019, the Defendant via telephone and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from RN's Nusenda Credit Union account. Defendant did not specify how much money was in the account.

Finally, on November 6th, 2019, Defendant via telephone and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from PP's credit union account. The Defendant again did not specify how much money was in the account.

On November 26th, 2019, the Defendant via telephone and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from RN's USAA

bank account and advised that the account contained $350,000.

On November 26th, also 2019, the Defendant via telephone and separately via text message provided the Government cooperator personal information and materials sufficient to withdraw money from RG's Wells Fargo Bank account and advised that that account contained $150,000.

The Defendant obtained the aforementioned personal information and materials relating to SM, CP, CW, RN, PP, RT and RG from the earlier mentioned telemarketing fraud activities he had engaged in between 2015 and 2019.

Defendant anticipated obtaining approximately 50 percent of any money that the Government cooperator was able to misappropriate from victim accounts. Incidentally, no victim funds were, in fact, misappropriated from any of these accounts by the Government cooperator.

During all of the aforementioned communications, the Defendant was located in India and the Government cooperator was located in Rhode Island. The Defendant was able to use or have others use SM, CP, CW, RT and RG's online banking login information to access online account information and determine the amount of money

in the victim's bank account.

The Defendant knew or suspected that SM, CP, CW, RN, PP, RT and RG, all of the victims here, were elderly individuals, each likely over the age of 65.

The parties agreed that the intended fraud loss in this matter was $600,000, your Honor.

Those are the facts that the Government's evidence would establish were this matter to have proceeded to trial.

THE COURT: Thanks, Mr. Shah.

Mr. Sachdeva, you've heard the elements of the seven counts of wire fraud that the Government has brought against you. I again remind you they would have to prove each and every one of those elements beyond a reasonable doubt in order for you to be found guilty of any or all of those charges.

You also heard the facts the Government would prove if this case were to go to trial. Do you admit the facts as stated by the Government as true?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before I ask you about your change of plea, do you have any questions for me or do you want to discuss any matter privately with your counsel?

THE DEFENDANT: No, your Honor.

THE COURT: How do you now plead to the

seven-count Information brought against you, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: This Court has heard from the Government the evidence it would present if this case were to go to trial.

The Court has questioned the Defendant regarding his understanding of the nature of the proceedings and the consequences of entering a plea of guilty to the charges.

It is, therefore, the finding of this Court in the case of the United States versus Chirag Sachdeva that the Defendant is fully competent and capable to enter an informed plea, that the Defendant is fully aware of the consequences of the plea and the charges and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the charges; and, therefore, the plea is accepted, and the Defendant is now adjudged guilty of those offenses.

Sentencing will be set down for December 8th, 2020, at 10 a.m.  December 8th, 2020, at 10 a.m.

Mr. Calcagni?

MR. CALCAGNI:  Your Honor, my client has asked me to ask the Court to provide him with the most

expedited sentencing date possible.

I've explained to him that there is a bit of a process involved with the presentence investigation; but notwithstanding, I've committed to him to expediting that as fast as I can with probation, and he's asked me to ask the Court for a date as early as possible.

THE COURT: So what I'll do, assuming Mr. Shah doesn't have any objection, I'll ask Ms. McGuire to contact Kristen Mattias in probation, let her know that if we could fast track this one -- not fast track it but put it at the top of the list so that it can get done thoroughly, as they usually do, but with some priority.

And then if it comes in soon enough after the objection period of time that we can move up the sentencing, then we'll do that for you.

MR. CALCAGNI: Understood. So as of now we'll have December?

THE COURT: December 8th at 10 a.m., and we'll do our best to see if we can't move the process along sooner.

MR. CALCAGNI: Thank you. I know he'll appreciate that.

THE COURT: Mr. Shah, anything further for the

Government?

MR. SHAH:  Nothing further.  Thank you, your Honor.

THE COURT:  Okay.  Thanks.

Mr. Sachdeva, please stay safe in there, and we'll see you in a little bit.

THE DEFENDANT:  Okay, your Honor.

THE COURT:  We'll stand adjourned.

(Adjourned)

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

February 10, 2021
Date


/s/ Karen M. Wischnowsky
Karen M. Wischnowsky, RPR-RMR-CRR
Federal Official Court Reporter